**In re D. H. OVERMYER TELECASTING CO., INC., Debtor.**

**COLUMBIA PICTURES INDUSTRIES, INC., Appellant,**

v.

**D. H. OVERMYER TELECASTING CO., INC., Appellee.**

**No. 78 Civ. 3226 (KTD).**

United States District Court, S. D. New York.

May 25, 1979.

Robson & Toboroff, New York City, for debtor-appellee; Morton S. Robson, Howard D. Ressler, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for Columbia Pictures Industries, Inc.; Michael L. Cook, Martin J. Bienenstock, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge:

This is an appeal by Columbia Pictures Industries, Inc. [hereinafter referred to as "Columbia"], from three rulings of the Honorable Roy Babitt, Bankruptcy Judge, overruling Columbia's objections to questions propounded by the debtor, D. H. Overmyer Telecasting Co., Inc. [hereinafter referred to as "Telecasting"], at a deposition of Thomas Bianchi, Senior Counsel for Columbia, conducted pursuant to Rule 205 of the Bankruptcy Rules.

In August of 1976, Telecasting filed a petition under Chapter XI of the Bankruptcy Act. Thereafter Columbia filed a claim as a creditor. Columbia has at all times during the Bankruptcy proceedings been represented by both "in-house" counsel and outside counsel. Columbia's staff of "in-house" counsel, insofar as this appeal is concerned, consists of Thomas Bianchi, Senior Counsel, and Edward Holtzmann and Victor Kaufman as general counsel. Columbia's outside counsel for purposes of the instant bankruptcy proceeding are Messrs. Weil, Gotshal & Manges [hereinafter referred to as "Weil Gotshal"].

As the Chapter XI proceedings progressed, Telecasting requested, by *ex parte* application, an order from Judge Babitt authorizing the examination of various Columbia representatives including Thomas Bianchi. The purpose for the depositions, as set forth in the *ex parte* application, was to ascertain' whether Columbia, as creditor, had received or been promised any advantage from the First National Bank of Boston [hereinafter referred to as "First National"], a co-creditor in the Telecasting estate, for joining in First National's motion to dismiss the Chapter XI proceeding. If such an advantage were realized by Columbia (as a consequence of its joining First National's motion to dismiss) it might constitute a crime under 18 U.S.C. § 152 which provides in pertinent part:

> Whoever knowingly and fraudulently gives, offers, receives or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof, for acting or forbearing to act in any bankruptcy proceeding;
>
> . . . . .
>
> Shall be fined not more than $5,000 or imprisoned for not more than five years, or both.

Judge Babitt signed the order and the Bianchi deposition was set down for May 23, 1978. At the deposition Bianchi, represented by Weil Gotshal, was asked the following questions:

(a) "Could you tell me, to the best of your recollection, Mr. Bianchi, the substance of the conversation between you and Mr. Kaufman about the Columbia Pictures' claim against D. H. Overmyer Telecasting?" Tr. at 21.

(b) "So that in determining whether that motion (to dismiss the Chapter XI proceeding) was appropriate . . . what did you do, what facts did you learn . . . ?"

(Answer: "I had a discussion with our outside counsel (Weil Gotshal), and the facts that I learned came from our outside counsel.")

"What did you learn?" Tr. at 31–32.

(c) "Did you speak to anybody at Columbia to report on the results of your investigation of the appropriateness of this motion [to dimiss]?"

(Answer: "I talked to Ed Holtzman [sic].")

"What did you tell Mr. Holtzman [sic]?" Tr. at 42.

Bianchi's counsel objected to each of these questions on the dual grounds that the communications sought by Telecasting were protected by the attorney-client privi-

lege and were, in any event, the work product of Columbia's counsel and as such were not discoverable. Judge Babitt overruled these objections and ordered Bianchi to answer the questions under threat of contempt. At that point Bianchi complied with the order and responded to the questions.[1]

Columbia now appeals Judge Babitt's rulings asserting once again the attorney-client privilege and the work product doctrine. Columbia also objects on the grounds that the questions in issue were calculated to elicit information beyond that permissible in a Rule 205 examination.[2] Finally, Columbia argues that by compelling Mr. Bianchi to respond under threat of contempt despite the expressed intention of counsel to appeal the rulings, Judge Babitt chilled Columbia's right to appeal.[3]

Upon these grounds Columbia requests that I reverse Judge Babitt's rulings on the questions in issue; order that Bianchi's compelled responses be stricken from the record; and that I establish procedural rules governing future Rule 205 examinations in this action to provide that a deponent be able to object to questions propounded at an examination and not be compelled to respond under threat of contempt until the objections have been reviewed on appeal.

Telecasting, quite predictably, argues that the rulings of Judge Babitt were correct and should be affirmed. It also has moved to "correct and modify" the record on appeal to include the deposition testimony of Messrs. Weiner, Fischer, as officers of Columbia, and Holtzmann as in-house counsel.

█ Turning first to Telecasting's motion to correct and modify the record on appeal, the motion is granted. Columbia is correct in its argument that Judge Babitt did not expressly rely upon the examinations of Weiner, Fischer and Holtzmann in overruling the objections in issue and as such the depositions appear to be collateral material. However, given the relevance of the depositions to the objections raised by Columbia they may have played a part, albeit indirect, in Judge Babitt's rulings and accordingly will be considered in their review to which I now turn.

The attorney-client privilege is one of the pillars upon which our adversarial system rests. It permits a client to freely divulge pertinent information to his attorney in order to secure legal assistance without fear of subsequent disclosure.

Under Rule 501 of the Federal Rules of Evidence, made applicable to bankruptcy cases and proceedings by Rules 1101(b) and 1101(c) of the Federal Rules of Evidence, the scope of the attorney-client privilege is governed by state law. In New York the privilege is set forth in § 4503(a) of the Civil Practice Law and Rules and provides that:

> Unless the client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential com-

1. In overruling the objections Judge Babitt stated:

   I will allow the question for two reasons. Number one, this does not deal with competence of evidence, and such questions which might at sometime be made at such proceeding where the rules of evidence apply. The objection could then be taken as to competence . . . .

   Number two, I can't think of anything more closely connected with an inquiry into the acts, conduct and property of a bankrupt or debtor than the status of whether ‗ ‗." Tr. at 18.

2. Concerning the scope of an examination, Rule 205 provides in pertinent part:

   The examination under subdivisions (a) and (b) of this rule may relate only to the acts, conduct, or property of the bankrupt, or to any matter which may affect the administration of the bankrupt's estate, or to his right to discharge.

3. Columbia also asserts the Code of Professional Responsibility as a basis for sustaining its objections. In light of the statutory privilege in New York, I need not decide whether the Code is sufficient to prevent disclosure in the instant suit. See 5 J. Weinstein, H. Korn & A. Miller, New York Civil Practice ⸢ 4503.02 at 45–103–45–108 (1977). I merely note that the Code provides that where an attorney is ordered to disclose certain information, as in the instant case, disclosure is permitted.

munication made between the attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing conducted by or on behalf of any state, municipal or local governmental agency or by the legislature or any committee or body thereof.

█ Telecasting correctly concedes that the attorney-client privilege is applicable to Rule 205 examinations. *See, e. g., Freeman v. Seligson*, 132 U.S.App.D.C. 56, 63–64, 405 F.2d 1326, 1333–34 (1968). It contends, however, that the information sought does not fall within the privilege and accordingly the objections lodged by Columbia were properly overruled by Judge Babitt. They argue that the information sought at the deposition was calculated to determine whether Columbia had acted "illegally or fraudulently" in joining First National's motion to dismiss. They conclude, therefore, that the conversations evidence an ongoing criminal activity and as such are not protected by the attorney-client privilege. *See Matter of Doe*, 551 F.2d 899, 902 (2d Cir. 1977).

There were two groups of conversations Telecasting obtained in the Bianchi deposition. The first consisted of those conversations among Columbia's "in-house" counsel —Bianchi, Holtzmann and Kaufman. The second were those conversations between Bianchi, as Senior in-house Counsel for Columbia, and Weil Gotshal as Columbia's outside counsel.

█ Insofar as these latter conversations are concerned, I find that they fall squarely within the attorney-client privilege. It is undisputed that Weil Gotshal was representing Columbia during the period in issue. Thus, there clearly existed an attorney-client relationship between Columbia and Weil Gotshal. The question, however, is whether Columbia's status as a client, complete with its attorney-client privilege, will envelop Mr. Bianchi, a Columbia employee,

insofar as his conversations with Weil Gotshal are concerned.

It has been held that a corporate client's privilege will extend to the conversations of its employees only when:

(1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1978). *See also Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 491–92 (7th Cir. 1970), *aff'd*, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971). Consideration of these elements in the case at bar leads to the inescapable conclusion that the privilege attached to the communications in issue. The purpose of the communications was to ascertain whether Columbia's motion to dismiss was appropriate. Although it is clear that the inquiry came after the motion was filed by Columbia, it unquestionably sought legal advice on behalf of Columbia. *See SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 523–24 (D.Conn.1976), appeal dismissed, 534 F.2d 1031 (2d Cir.). In addition, although Mr. Bianchi bears the title of Senior Counsel for Columbia the record is clear that Mr. Kaufman was Bianchi's superior and it was Mr. Kaufman who directed Bianchi to inquire of Weil Gotshal whether the motion was appropriate. Tr. at 25. Finally, the record is clear that the inquiry was within the scope of Bianchi's duties as Senior Counsel and the communications were not disseminated beyond those persons serving as in-house and outside counsel for Columbia. Tr. at 32.

Moreover, quite apart from the above analysis it has been held that the "[c]ommunications between 'in-house' counsel seeking legal advice for the corporate client and

outside counsel giving legal advice as an attorney are covered by the attorney-client privilege." *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1167 (D.S.C. 1975). It is evident that Bianchi's conversations with Weil Gotshal were in his capacity as in-house counsel for Columbia and not merely as a Columbia employee. It is equally clear that Weil Gotshal was providing Bianchi with legal advice.

Accordingly, I find that whether Bianchi is viewed as a Columbia employee or as in-house counsel the attorney-client privilege attached to his conversations with Weil Gotshal.

■ I find no merit in Telecasting's argument that the purpose of the communication was to further criminal or fraudulent activity by Columbia. To the contrary, the stated purpose of the communications was to ascertain whether the motion was appropriate. In other words, the communications between Bianchi and Weil Gotshal were calculated to expose fraudulent activity if any existed. More importantly, however, given the substance of Mr. Bianchi's conversation, even when viewed in conjunction with the testimony of Weiner, Fischer and Holtzmann, I find no evidence that Columbia acted illegally in pursuing its procedural alternatives. There is simply no evidence that Columbia received or was promised any benefit from First National for joining its motion to dismiss. In the absence of such a benefit, the allegation of illegal activity is baseless and accordingly there is no

reason to compromise the attorney-client privilege in this case.[4]

■ Turning to those conversations between Bianchi and Messrs. Kaufman and Holtzmann a different result obtains. Although all three individuals were in-house counsel to Columbia during the conversations, the conversations were not the product of communications between an attorney and his client. Rather, they merely represent communications between co-counsel for Columbia and as such do not trigger the attorney-client privilege.[5] *Dura Corp. v. Milwaukee Hydraulic Products, Inc.,* 37 F.R.D. 470, 473 (E.D.Wis.1965).

By labeling the communications as those between co-counsel, however, the issue becomes whether they constitute an attorney's work product and are for this reason not discoverable by Telecasting.

■ Upon review of the conversations in issue it is evident to me that they represent the very essence of an attorney's work product. Indeed, they focus upon an attorney's motives and strategy in bringing a motion to dismiss. Accordingly, absent a showing of necessity or justification by Telecasting these conversations are beyond discovery. *Hickman v. Taylor,* 329 U.S. 495, 509–10, 67 S.Ct. 385, 91 L.Ed. 451 (1947).[6]

Telecasting argues that the requisite showing of necessity and justification were made to Judge Babitt to permit discovery of these conversations. In the next breath,

---

4. Moreover, I find no support in the record for Telecasting's argument that by overruling Columbia's objections Judge Babitt had determined, *sub silentio,* that there was sufficient evidence of illegal conduct by Columbia to take the communications outside the protection of the attorney-client privilege. To the contrary, all indications are that in overruling the objections, the Judge felt that the privilege did not apply at a Rule 205 examination, Tr. at 18, 32, 42 and not because there was any evidence of illegal conduct by Columbia.

5. While not raised by Telecasting it could be argued that Bianchi in conversing with Kaufman and Holtzmann was acting as Columbia's attorney while Kaufman and Holtzmann were members of Columbia's "control group" representing the interests of Columbia in the conver-

sations. Based upon this analysis an attorney-client relationship could be established.

Although the argument is not without merit, *Duplan Corp. v. Deering Milliken, Inc., supra,* 397 F.Supp. at 1167, it is evident that the conversations between Bianchi, Holtzmann and Kaufman were not those of an attorney/client but rather were those of three attorneys discussing their strategy with respect to their corporate client.

6. The attorney work product involved in the instant case concerns only the unrecorded mental impressions of an attorney. Since Rule 26(b)(3) of the Federal Rules of Civil Procedure by its terms applies only to the discovery of documents and tangible items, it is inapplicable to the case at bar.

however, Telecasting admits that it possesses "substantial documentary proof suggesting that Columbia acted in behalf of First National." In light of this admission, it is hard to envision how Telecasting can possibly be in "need" of these conversations, or can "justify" compromising the work product doctrine to compel their disclosure. *See Hickman v. Taylor, supra*, at 510–12, 67 S.Ct. 385.

Moreover, if Telecasting truly seeks discovery as to whether First National conferred some fee or benefit upon Columbia for joining First National's motion to dismiss, there are other sources available to Telecasting for the discovery of this information. For example, Telecasting could request a Rule 205 examination of First National officials or non-legal Columbia employees without involving the disclosure of an attorney's work product. There is no indication, however, that Telecasting ever attempted to tap any source other than Bianchi for this information. Accordingly, I find that Telecasting has neither demonstrated a sufficient need nor justification for the disclosure of the attorney work product in issue and it was error to permit its discovery.

I decline, however, to order that subsequent rulings at Rule 205 examinations conducted by Telecasting be appealed prior to compelling responses under threat of contempt. Although in most cases the better procedure is to permit the appeal prior to compelling the response, that is a determination which is within the discretion of the Bankruptcy Judge. I will not foreclose the exercise of that discretion.

Accordingly, I grant Telecasting's motion to amend the record on appeal and upon this amended record I reverse the Bankruptcy Court's rulings as to the three conversations in issue and order that Bianchi's compelled responses be stricken from the record.