**Alice MARMON, Ida Davidson and Gerald Schmidt, as Personal Representative of the Estate of Ernest Schmidt, Petitioners,**

**v.**

**William F. HODNY, Judge of the District Court for the Southwestern Judicial District, acting pursuant to appointment by Order of the Supreme Court, Respondent.**

Civ. No. 9705.

Supreme Court of North Dakota.

Jan. 10, 1980.

---

3. *City of Bismarck v. Thom*, 261 N.W.2d 640 (N.D.1977).

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for petitioners; argued by Ward M. Kirby, Dickinson.

Greenwood, Greenwood & Greenwood, Dickinson, for respondent; argued by Dann E. Greenwood, Dickinson.

SAND, Justice.

Alice Marmon and other petitioners requested this court to exercise its original jurisdiction and issue a supervisory writ directing the Judge of the District Court for Slope County to vacate its order compelling petitioners to answer certain interrogatories.

The proponents of the last will and testament of August Schmidt submitted it for probate in Slope County Court. The petitioners objected to the probate of the will on the grounds that the decedent lacked testamentary capacity and intent at the time of the execution of the will and that the decedent had been subjected to fraud

and undue influence and duress prior to and at the time of the execution of the will on 14 October 1970. The county court after a hearing denied probate of the will, whereupon the proponents of the will appealed to the district court[1] in which a trial anew is now pending.

The proponents of the will after the appeal was perfected submitted interrogatories to the petitioners which were answered, and as pertinent to this appeal are as follows:

"1. State the name, address and telephone number of each witness you intend to call at trial.

### "ANSWER TO INTERROGATORY NO. 1:

Appellees are not certain at this stage of the names of witnesses who will be called by the Appellees at time of trial, but the following is a listing of potential witnesses having knowledge of relevant facts who are currently known to the Appellees:

[Names and addresses of witnesses were listed.]

"2. With regard to each person named in your answer to the foregoing Interrogatory, state:

a. Whether such person was in the actual physical presence of the decedent, August Schmidt, on the 14th day of October, 1970, and if so, explain;

b. The date and location and description of the substance of any and all meetings, visits and discussions by such person with the decedent, August Schmidt, in the five (5) years next preceding October 14, 1970;

c. The date, location and description of any and all meetings, visits or discussions by such person with the decedent, August Schmidt, between October 14, 1970 and July 29, 1976;

d. The substance of any testimony which such person intends to make at trial.

### "ANSWER TO INTERROGATORY NO. 2:

Persons who testified or gave statements at the time of trial in County Court are expected to give testimony on questioning similar to the testimony given at trial with reference to each of the matters raised by the Interrogatory. With respect to relevant testimony by other persons who may have knowledge of the facts, information concerning such testimony has been acquired by my attorney in the process of preparing for trial. To my knowledge he has not, at this time, obtained any written statements concerning such proposed testimony but may do so prior to trial, in which event, a claim of work product privilege of such information obtained by counsel in preparing for trial is made.

"3. With regard to the allegations in your AMENDED AND SUPPLEMENTAL PETITION AND OBJECTIONS TO PROBATE OF PURPORTED WILL AND FOR ADJUDICATION OF INTESTACY that August Schmidt 'lacked testamentary capacity to make and execute a valid Last Will and Testament on October 14, 1970 . . .' state in detail:

a. In what sense, or, if you rely on more than one basis in what senses the decedent, August Schmidt, was incapable of executing a Last Will and Testament on October 14, 1970;

b. Each and every fact, matter and thing upon which you rely to support such allegation;

c. The name, address and phone number of each and every witness you intend to call at trial to prove such allegation;

---

1. The district court has jurisdiction by reason of the appeal perfected pursuant to Ch. 30–26, NDCC, and as a result all issues will be tried not on the record made in the county court but will be considered and determined anew in district court by hearing the allegations and the proofs of the parties and by determining all of the questions of law and fact arising therefrom.

*In re Estate of Bjerke,* 148 N.W.2d 575 (N.D. 1967). The district court, in trial anew, may receive evidence which was not offered or admitted in county court unless the county court acted on affidavits, in which event the appeal will be determined upon the certified transcript. *In re Glavkee's Estate,* 76 N.D. 171, 34 N.W.2d 300 (1948).

d. The name, address and phone number of any additional persons known to you who has, or whom you believe has, knowledge of such facts, matters or things.

## "ANSWER TO INTERROGATORY NO. 3:

The allegations contained in the AMENDED AND SUPPLEMENTAL PETITION AND OBJECTIONS TO PROBATE AND FOR ADJUDICATION OF INTESTACY were prepared by counsel for the undersigned. The investigation of facts conducted by my counsel, as well as the results of such investigation, are deemed to be privileged and the result of preparation for trial. (See *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). With respect to prospective testimony of witnesses and persons giving statement which were admitted into evidence at the time of trial of the above matter in the County Court at Amidon, North Dakota on September 19, 1978.

"4. With regard to your allegation in your AMENDED AND SUPPLEMENTAL PETITION AND OBJECTIONS TO PROBATE OF PURPORTED WILL AND FOR ADJUDICATION OF INTESTACY, '. . . execution of said alleged will was obtained through fraud and undue influence, . . .' state in detail;

a. A description of the undue influence practiced upon August Schmidt;

b. Each date upon which such undue influence was practiced;

c. The location at which such undue influence was practiced;

d. The name and address of each person whom you allege practiced such undue influence;

e. The name, or other means of identification, and address of each person present at the time and placed such undue influence was practiced;

f. A description of the fraud practiced upon August Schmidt;

g. Each date upon which such fraud was practiced;

h. The location at which such fraud was practiced;

i. The name and address of each person whom you allege practiced such fraud;

j. The name or other means of identification, and address of each person present at the time and placed such fraud was practiced;

k. The name and address of each person you intend to call at trial to prove such allegations of fraud and undue influence.

## "ANSWER TO INTERROGATORY NO. 4:

See Answer to Interrogatory No. 3.

"5. With regard to your allegation in your AMENDED AND SUPPLEMENTAL PETITION AND OBJECTIONS TO PROBATE OF PURPORTED WILL AND FOR ADJUDICATION OF INTESTACY, '. . . that at the time of execution of said alleged will, the said August Schmidt lacked testamentary intent . . .' state in detail;

a. In what sense, or if you rely on more than one basis, in what senses, the decedent, August Schmidt, lacked testamentary intent;

b. Each and every fact, matter and thing upon which you rely to support such allegation;

c. The name and address of each witness you intend to call at trial to prove such allegation;

d. The name and address of any additional persons known to you who has, or whom you believe has, knowledge of such facts, matters and things.

## "ANSWER TO INTERROGATORY NO. 5:

See Answer to Interrogatory No. 3.

"6. With regard to your allegations in your AMENDED AND SUPPLEMENTAL PETITION AND OBJECTIONS TO PROBATE OF PURPORTED WILL

AND FOR ADJUDICATION OF INTESTACY, '. . . that said execution was procured through duress . . .' state in detail;

a. A description of the duress practiced upon August Schmidt;

b. Each date upon which such duress was practiced;

c. The location at which such duress was practiced;

d. The name and address of each person whom you allege practiced such duress;

e. The name, or other means of identification, and address of each person present at the time of and place such duress was practiced;

f. The name and address of each witness you intend to call at trial to prove the allegations of duress.

"ANSWER TO INTERROGATORY NO. 6:

See Answer to Interrogatory No. 3."

The proponents of the will then moved the court as permitted by Rule 37(a)(2) of the North Dakota Rules of Civil Procedure, for an order compelling the respondents to answer more fully and completely and with specificity interrogatories numbered 3, 4, 5, and 6.

After a hearing, in which no evidence[2] was introduced but only arguments of counsel were heard, the court issued an order compelling the petitioners herein to forthwith answer fully and completely and with specificity the questions in interrogatories 3(b) and (c), 4(a) through (k), 5(b) and (c), and 6(a) through (f).

The court also ordered that interrogatories No. 3(a) and 5(a) constituted "work product" of petitioners' attorney, and were therefore not required to be answered. The court further ordered that interrogatories No. 3(d) and 5(d) were repetitive and need not be answered.

The petitioners then applied to this court as stated above for a supervisory writ directing the district court to vacate its order or in the alternative suspend its order and require that a showing be made of good cause for compelling the petitioners to answer the interrogatories referred to above.

■ In *Burlington Northern v. North Dakota District Court*, 264 N.W.2d 453 (N.D.1978), we observed that our Court on numerous occasions stated that its power to issue original remedial writs, even upon a proper showing, is discretionary and that its power cannot be invoked as a matter of right but will be employed to prevent possible injustice and that from this it necessarily follows that the court itself, on a case-by-case basis, will determine whether or not it should exercise its original jurisdiction. *State ex rel. Vogel v. Garaas*, 261 N.W.2d 914 (N.D.1978); *State ex rel. Foughty v. Friederich*, 108 N.W.2d 681 (N.D.1961); *State ex rel. Lyons v. Guy*, 107 N.W.2d 211 (N.D.1961).

This Court in *Ingalls v. Bakken*, 167 N.W.2d 516, 518 (N.D.1969), said:

"Unless the action of the trial court, which the Supreme Court is asked to supervise, is such that it will result in grave or serious prejudice to the applicant, and for which the applicant has no adequate remedy, the application for such supervisory writ will be denied."

■ The order of the district court, dated 24 October 1979, is not appealable. *Northwest Airlines, Inc. v. State Board of Equalization*, 244 N.W.2d 708 (N.D.1976); *Budge v. Anderson*, 146 N.W.2d 169 (N.D.1966). It further appears that the petitioners do not have a plain and speedy remedy in the ordinary course of law and that the ends of justice require this Court to act.

The basic issue we have under consideration here is whether or not the court erred in issuing an order compelling the petition-

---

2. In *Burlington Northern, infra*, we emphasized that facts set out in oral argument are not considered facts unless the parties have argued or stipulated that they are the facts of the case. This Court is not clairvoyant. It must rely upon facts in the record as made and submitted or as made before this Court. This is true whether the matter is before the Court as a result of an appeal or an original proceedings.

ers to answer fully and completely with specificity the questions set out in the interrogatories 3(b) and (c), 4(a) through (k), 5(b) and (c), and 6(a) through (f).

The proponents of the will in support of their motion before the trial court to compel the petitioners to answer interrogatories argued:

"As is clear from the first part of each of the interrogatories in question Appellant [proponent of the will] is seeking a more definite statement. That is to say Appellant seeks to narrow the issues in order that he might prepare his case."

■ The proponents further contended that the next portion of each of the interrogatories in question seeks to apply the facts upon which respondents [petitioners] base their respective allegations. There can be no doubt that by the weight of authority facts relied upon to support allegations or facts underlying the opposing party's contention are generally discoverable.

The petitioners responded to the proponents' argument that the interrogatories in fact seek the work product of the petitioners and are not required to be answered.

The proponents contended in district court and here that their interrogatories were designed to seek a more definite statement and to narrow the issues in order to prepare for the case. If this was correct, the proceedings should have been under Rule 12(e), but from the interrogatories submitted it appears quite evident that the proponents were attempting discovery under Rule 26 NDRCivP.

RULE 26 "(a) *Discovery Methods.* Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission. Unless the court orders otherwise under subdivision (c) of this rule, the frequency of use of these methods is not limited.

"(b) *Scope of Discovery.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(2) *Insurance Agreements.* . . .

(3) *Trial Preparation—Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. Upon re-

quest, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of Rule 38(a)(4) apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is

(A) a written statement signed or otherwise adopted or approved by the person making it, or

(B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded."

Rule 26 of the North Dakota Rules of Civil Procedure is adapted from the Federal Rules of Civil Procedure Rule 26, and consequently the authors of federal rules practice and procedure, as well as federal case law, will be given appreciable weight in interpreting and construing North Dakota Rule 26 of the North Dakota Rules of Civil Procedure.

Wright & Miller, Federal Practice and Procedure: Civil § 2001, states three distinct purposes and uses for discovery:

(1) To narrow the issues, in order that at trial it may be necessary to produce evidence only on a residue of matters that are found to be actually disputed and controverted.

(2) To obtain evidence for use at trial.

(3) To secure information about the existence of evidence that may be used at the trial and to ascertain how and from whom it may be procured, as for instance, the existence, custody, and location of certain documents, or names and addresses of persons with a knowledge of relevant facts.

The author continues:

"The courts have recognized the utility of the discovery rules and have construed them liberally so that they may achieve the purposes for which they are intended. Some of these purposes are to avoid surprise and the possible miscarriage of justice, to disclose fully the scope of the controversy, to narrow, simplify, and frame the issues involved, and to enable a party to obtain the information needed to prepare for the trial. In this way it was sought to put an end to the 'sporting theory of justice' by which the result depends on the fortuitous availability of evidence or the skill and strategy of counsel."

The author also recognized that in a 1975 securities case the court observed that there was a potential for possible abuse of the liberal discovery provisions of the federal rules. The author further noted that the belief that discovery is being widely abused was voiced also at the National Conference on the Causes of Popular Dissatisfaction with the Administration of Justice in April 1976. This led to a report of the special committee on the section of litigation of the American Bar Association proposing changes in the discovery rules to cure the perceived abuses and this led, in turn, to a draft of proposed amendments circulated by the advisory committee on civil rules in March 1978.[3]

In *Eichenberger v. Wilhelm*, 244 N.W.2d 691, 695 (N.D.1976), we said that:

"Among the functions of discovery are 'to obtain facts [and] to narrow and crystallize the issues before the court.' "

Mental impressions and legal theories, under the work product rule, are generally given strong protection. Some courts have

---

**3.** The 1978 draft by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States was again amended in 1979. Basically, the new draft adds subdivision (f) which provides for a discovery conference and permits the court to direct the attorneys to appear before it for a conference on the subject of discovery. The advisory committee note with reference to subdivision (f) recognizes that there has been widespread criticism of abuse of discovery and that the committee has considered a number of proposals to eliminate those abuses, and for the present they believe that discovery conference is the answer.

even held them to be entitled to absolute protection. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir. 1974); *Town of North Kingston v. Ashley*, 374 A.2d 1033 (R.I.1977).

In *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the United States Supreme Court had under consideration the discovery procedures as permitted under the Federal Civil Rules of Procedure. The Court, in holding that the attorney did not have to answer certain interrogatories, said:

> "But as to oral statements made by witnesses to Fortenbaugh [lawyer] whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production. Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer."

The Court observed that the person seeking the oral statement frankly admits that it was to help prepare himself to examine witnesses and to make sure that he has overlooked nothing. This is insufficient under the circumstances to permit an exception to the policy underlying the privacy of the lawyer's professional activities.

In re *Grand Jury Investigation (Sturgis)*, 412 F.Supp. 943, 949 (E.D.Pa.1976), the court stated that such memoranda (made by lawyers) "are so much a product of the lawyer's thinking and so little probative of the witness's actual words that they are absolutely protected from disclosure." However, in *Grand Jury Investigation*, 599 F.2d 1224 (1979), the United States Circuit Court of Appeals, Third Circuit, the court expressed its belief that such memoranda were not absolutely protected but are entitled to only a qualified protection or immunity.

In re *D. H. Overmeyer Pipe Casting Co., Inc.*, 470 F.Supp. 1250 (1979), the United States District Court of the South District in New York held that conversations between attorneys as co-counsel are not considered attorney-client privilege but absent a showing of necessity or justification these conversations are beyond discovery as an attorney's work product.

In re *Anthracite Coal Antitrust Litigation*, 81 F.R.D. 516 (1979), the United States District Court, Middle District Pennsylvania, observed that the Rule 26(b)(3)

> ". . . is not by its terms applicable to all communications between an attorney preparing for trial and a non-client but only to documents and other tangible things which would normally be written or recorded statements of the non-clients. The Court is of the view, however, that the same standards set forth in Rule 26(b)(3) should be applied both to communications of information and tangible recordations of such information. . . . First, such communications could be regarded as any other facts communicated to the corporation and within its knowledge so that disclosure of them would be required simply upon a showing of relevancy. . . . Second, such communications could be treated as absolutely privileged and therefore not discoverable. The major drawback to such treatment would be, however, that it would encourage attorneys not to make written records of any interviews with non-clients in order to avoid the possibility that such memoranda would be subject to disclosure upon a showing of substantial need for the material by opposing counsel together with a demonstration that similar information cannot be reasonably obtained by other means. Therefore, the Court

will treat both oral communications of information and written statements as identical for purposes of determining whether the work-product doctrine applies in this case. Of course, mental impressions or conclusions of counsel are not discoverable even if an entitlement to work product is shown."

The Wisconsin Supreme Court in *State v. Circuit Court for Milwaukee County*, 34 Wis.2d 559, 150 N.W.2d 387 (1967), relying upon *Hickman*, concluded that a lawyer's work product consists of the information he has assembled including the mental impressions, the legal theories and the strategies that he has pursued or adopted as derived from interviews, statements, memoranda, correspondence, briefs, legal and factual research, personal beliefs, and other tangible or intangible means. The Court continued by stating that this broad definition of lawyer's work product requires that most materials, information, mental impressions and strategy collected and adopted by a lawyer after retainer in preparation of litigation and relevant to the possible issues be initially classified as work product of the lawyer and not subject to inspection or discovery unless good cause for discovery is shown. The Court also briefly summarized mental impressions, anti-indolence, diligence and ethical considerations. The Court further observed if indiscriminate discovery is permitted the possibility that neither side will adequately prepare is present and the attorney could also be placed in position where he would be required to be a witness against his client and might be compelled to withdraw from the case.

In concluding what is good cause for discovery matters, the Wisconsin Supreme Court stated that the purpose of the inquiry should be considered in light of the facts and the issues of the case, and observed that in *Hickman v. Taylor*, 329 U.S. at 513, 67 S.Ct. at 393, the United States Supreme Court held that the stated purpose of better preparing counsel to examine witnesses and to make sure he had overlooked nothing was insufficient to warrant an intrusion into opposing counsel's trial preparation. These observations are persuasive and meritorious.

The foregoing cases are only a few of the many cases that touch upon this difficult problem. Nevertheless it would serve no beneficial purpose to analyze each case.

The petitioners in the instant case, relying upon *Hickman v. Taylor*, 67 S.Ct. 385, argue that the district court's order compelling them to answer certain interrogatories would in effect make them disclose attorney's work product which is "privileged as the result of preparation for trial."

■ A careful examination of the interrogatories which we believe are overly broad leaves us with the impression that at least to some degree the work product of petitioner's attorney is involved. It would be difficult to answer the questions completely without using attorney's work product. We further note that proponents of the will did not give any justifiable or valid reason why the attorney's work product should be disclosed in whole or in part as required by Rule 26(b)(3), NDRCivP. Furthermore, no protective provision against disclosure of mental impressions, legal theories or conclusions was contained in the order.

Neither does it appear from the record that the subject matter sought to be discovered was examined in camera by the court to determine if it was attorney's work product. (We are not suggesting that this is a requirement to satisfy the rule.)

The petitioners answered certain interrogatories by stating that the persons known to the undersigned petitioners who may appear at the trial in district court also were witnesses who testified or persons who gave statements which were admitted into evidence in the county court trial at Amidon on September 1978, and as such the information is as readily available to the proponents of the will as it is to the petitioners.

The proceedings presently pending before the district court in which the interrogatories are at issue is a trial anew of the proceedings had in the county court. We

must assume that the parties to the litigation in the county court performed. and completed all appropriate trial preparation before the case was tried in the county court. It would thus appear that the county court trial constituted a "dress rehearsal" of the district court trial.

The participation in or the presence at a trial will give the attorney more firsthand information as to issues, strategy, testimony of witnesses, etc., than can be generally obtained by discovery. We do not believe that an attorney will deliberately fail to perform or prepare a case properly with the understanding that if he loses he can have a retrial on appeal. We should, or must, assume the attorney trying the case in county court does so with the ultimate purpose of winning the case for a client.

■ In any event, at a new trial, trial anew, or retrial, the attorney, as the result of the first trial, will have obtained at least as much information at the first trial, if not more, than he can obtain by discovery and should be prepared to proceed with the new trial without any discovery except as to whether or not certain material will be omitted or new material, etc., will be presented at the trial. The interrogatories in this case did not concern themselves with such questions. The element of surprise, if it ever existed in the county court, is no longer present in the district court, at least

not in the same degree. We would also observe that changing counsel between the county court trial and the district court trial does not give new counsel any prerogatives which were not available to former counsel. . See, *Rummel v. Rummel*, 265 N.W.2d 230 (N.D.1978).

We are aware that Rule 26, NDRCivP, does not make specific reference to new trials or trials anew, etc. Nevertheless, by taking into account the purposes and objectives of Rule 26, we are satisfied that the rule does not contemplate complete de novo discovery at retrials, trials anew or new trials.

For the reasons stated herein, the requested supervisory writ is granted and the district court is herewith directed to vacate and set aside the order compelling the petitioners to answer certain interrogatories. Mandate shall issue forthwith.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.