**ATLANTIC, PACIFIC, MARINE, INC., Plaintiff,**

**v.**

**PAUL CLARKE, Defendant**

High Court of American Samoa
Trial Division

CA No. 155-94

February 23, 1998

Before: KRUSE, Chief Justice, LOGOAI, Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, William H. Reardon
For Defendant, E. Mason Martin

## ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, DEFENDANT'S MOTIONS TO DISMISS OR QUASH SERVICE OF SUMMONS

### Introduction

On February 12, 1997, the court granted defendant Paul Clarke's ("Clarke") motion for reconsideration on grounds that, due to family ties, the justice presiding at the trial should have disqualified himself from the case. The court had found Clarke civilly liable for breach of an at-will employment contract with plaintiff Atlantic, Pacific, Marine, Inc. ("APM") and had awarded APM $8,665.00 in damages. In addition to granting the motion for reconsideration, the court vacated its November 8, 1994 order denying Clarke's motion to quash service of process, and its October 24, 1996 opinion and order awarding judgment to APM.

Subsequently, on August 18, 1997, APM moved for default judgment, stating that Clarke has not answered or otherwise appeared in the action. Clarke responded, on September 12, 1997, with a motion to dismiss the complaint, or in the alternative, to quash the service of summons. Clarke claims that the service of the summons and complaint was not valid, and that the court therefore does not have jurisdiction over Clarke. The motions were heard on January 22, 1998. Both counsel were present.

### Discussion

A.  Defendant Clarke's Motion to Dismiss the Complaint or Quash Service of Summons

The Marshal's Certificate of Service indicates that the summons and complaint were served upon Clarke at his yacht, the M/V Pegasus ("the Pegasus"), in the Pago Pago Harbor, through an individual named Awry

Webb ("Webb"). The Marshal notes that Webb is a crew member of the vessel.

The issue is whether this was proper service under T.C.R.C.P. 4(d)(1), which states that service shall be made:

> upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

■ It is well settled that the trial court rules should be construed liberally to effectuate service, especially when the defendant receives actual notice of the suit. In addition, interpretation should be natural rather than artificial and each case turns upon its own factual situation. *Blackhawk Heating & Plumbing Co. v. Turner*, 50 F.R.D. 144, 145 (D.Ariz. 1970).

1. "Dwelling house or usual place of abode."

■ Cases construing "dwelling house or usual place of abode" have not come up with any "hard and fast definition." 2 J. Moore, MOORE'S FEDERAL PRACTICE, ¶ 4.10[3.-2] at 4-162 (2d ed. 1996). "Indeed these quaint terms are now archaic and survive only in religious hymns, romantic sonnets, and unhappily, in jurisdictional statutes." *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2nd Cir. 1991). Despite the lack of a clear definition and the inconsistency among jurisdictions, the modern trend is that for purposes of Rule 4(d)(1), a person can have more than one dwelling house or usual place of abode. 4A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1096, at 79-80 (2d. ed 1987)("[I]n a highly mobile and affluent society, it is unrealistic to interpret Rule 4(d)(1) so that the person to be served has only one dwelling house or usual place of abode at which process may be left.")

In *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253 (2nd Cir.), *cert denied*, 502 U.S. 968, 112 S.Ct. 440, 116 L.Ed.2d 459 (1991), the court held that the defendant, a citizen and domiciliary of Saudi Arabia, was properly served at his apartment complex in New York City even though he had lived there only thirty-four days of the calendar year. "[A] person can have two or more 'dwelling houses or usual places of abode,' provided that each contains sufficient indicia of permanence." *Id.* at 257. The court noted that the defendant owned the apartment,

furnished it, and spent a considerable amount of money remodeling it to fit his lifestyle. "[S]ervice there on that day was, if not the most likely method of ensuring that he received the summons and complaint, reasonably calculated to provide actual notice of the action. Surely, with so itinerant a defendant [...], plaintiff should not be expected to do more." *Id.* at 258 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Similarly, in *131 Main Street Associates v. Manko*, 897 F. Supp. 1507 (S.D.N.Y. 1995), the court found that service of process at an apartment in New York City was valid even though defendant's presence was "episodic rather than constant." *Id.* at 1524. The defendant did not own the penthouse, did not pay rent, and for 14 years had maintained a residence in Florida, at which he had spent most of his time in the previous years. *Id.* But, the court found, the defendant used the penthouse as his place to stay in New York City, and he visited New York City with considerable frequency and regularity during the 1980's and 1990's. *Id.* Service at the penthouse was therefore proper. The defendant's residence in Florida did not detract from the court's holding. "And while it is true that [defendant] had at least one long-standing residence outside of New York City, it cannot be said that the permanence [he] enjoyed at 425 E. 63rd was lessened by the fact that he enjoyed permanence elsewhere." *Id.*

The defendant in *In re Premium Sales Corp*, 182 B.R. 349 (Bkrtcy.S.D.Fla. 1995), resided at condo units sporadically throughout the year, from one to four weeks each time. Security reports and phone records showed that defendant and his wife were residing at the condo when service was attempted. *Id.* at 351. The court found that based on this evidence and actual notice, the defendant's visits to the condo units were sufficiently regular for them to constitute his dwelling house or usual place of abode. *Id.* The court also echoed the holding in *National Development Co.* that a person can have more than one dwelling house or usual place of abode where service of process may be left. *Id.*

■ Clarke primarily contends that service aboard the Pegasus was not proper because his dwelling house or usual place of abode is in California. The existence of an abode in California, however, does not preclude the opportunity for Clark to have other residences which will meet the requirements of T.C.R.C.P. 4(d)(1). Clarke was away from his California residence for a substantial period before this action was filed. He lived aboard the Pegasus for at least several months while he was in American Samoa and neighboring islands. Clarke owns and operates the vessel and always has access to his living quarters there. In addition, Clarke was actually residing aboard the Pegasus, and was not in California, when service of the summons and complaint was made.

These facts show that at the time process was served, the Pegasus was Clarke's "dwelling house or usual place of abode" for purposes of T.C.R.C.P. 4(d)(1).

█ The fact that Clarke's living quarters were aboard a vessel, the Pegasus, and not in an apartment, penthouse, condo, or other land-based dwelling does not change our analysis. A vessel can qualify as a dwelling house or usual place of abode. In *Hanna v. U.S. Lines*, 151 F. Supp. 122 (S.D.N.Y. 1957), the court found that a sea captain could not be served by leaving copies of the summons and complaint with the first officer of another vessel upon which the captain was temporarily present. *Id.* at 123. However, the court indicated that in some circumstances a vessel could qualify as a dwelling house. "Of course a situation might arise, i.e., residence upon a houseboat, or permanent residence by a so-called barge captain upon a scow, which might compel a different conclusion." *Id.* Clarke's presence upon his own vessel, the Pegasus, is a circumstance where a vessel qualifies as a dwelling house.

2. "Some person of suitable age and discretion then residing therein"

The remaining question is whether leaving copies of the summons and complaint with Webb was service upon "some person of suitable age and discretion then residing therein." Clarke states that he picked up Webb in Fiji and gave him a ride to American Samoa aboard the Pegasus. Webb was either a crew member or a guest for this time. There is not any disagreement that Webb is "of suitable age and discretion." APM and Clarke do disagree, however, whether Webb was "residing therein."

█ Although courts have at times held that service upon some non-live in employees is not proper under Rule 4(d)(1), *Polo Fashions, Inc. v. B. Bowman & Co.*, 102 F.R.D. 905, 908 (S.D.N.Y. 1984); *Franklin America Inc. v. Franklin Cast Products*, 94 F.R.D. 645, 647 (E.D. Mich. 1982), courts have also held that some non-live in employees, such as doormen, can be construed as "residing therein." *See, e.g., Hartford Fire Ins. Co. v. Perinovic*, 152 F.R.D. 128, 131 (N.D.Ill. 1993) (holding that the doorman of a high-security, restricted-access condominium building, authorized to receive packages and letters for residents, who received service was "residing therein" for purposes of Rule 4(d)(1)); *Churchill v. Barach*, 863 F. Supp. 1266, 1271 (D.Nev. 1994) (holding that leaving copies of the summons and complaint with the doorman of the defendant's apartment building satisfied the definition of leaving them at defendant's "usual place of abode with some person of suitable age and discretion then residing therein."). The fact that a doorman controls access to individual dwelling places supports a finding of "residing therein." A crew member aboard a private vessel like the Pegasus would provide a similar gate keeping function. "[W]here, as here, the process

server is nòt permitted to proceed to the actual apartment by the doorman or some other employee, the doorman becomes all the more 'suitable' as a repository of the paper because he is in effect the only accessible party." *131 Main Street Associates*, 897 F. Supp. at 1525.

█ Even if Webb was not a crew member of the Pegasus, but was merely a guest, he was properly residing therein for purposes of T.C.R.C.P. 4(d)(1). Webb was not merely visiting the Pegasus for a few hours, or even the day. He spent at least one night aboard the Pegasus, and presumably many more. "Rule 4(d)(1) is broad enough to include a student returning home from college to stay at least overnight at her parents' residence." *M. Lowenstein & Sons, Inc. v. Austin*, 430 F. Supp. 844, 845 (S.D.N.Y. 1977).

A liberal, but natural and not artificial construction of T.C.R.C.P. 4(d)(1) provides that Clarke received proper service of the summons and complaint. Service of Clarke upon his vessel the Pegasus, through Awry Webb meets the "dwelling house or usual place of abode" and "some person of suitable age and discretion then residing therein" requirements of T.C.R.C.P. 4(d)(1).

## B. Plaintiff APM's Motion for Default Judgment

█ APM is incorrect in stating that Clarke has not answered or otherwise appeared in the action. APM filed a complaint against Clarke on August 22, 1994 and Clarke filed an answer and counterclaim on November 15, 1994. When the court granted Clarke's motion for reconsideration of the trial opinion, it vacated both its opinion and order awarding judgment to APM and its order denying the motion to quash service of process. The court did not dismiss or otherwise alter Clarke's answer and counterclaim, even though they were filed after the court's order denying the motion to quash service of process.

The vacated orders allow the parties to visit anew the issue of valid service of process, and to retry the causes of action, but other aspects of the case remain as originally presented. *Cf. Marmon v. Hodny*, 287 N.W.2d 470, 479 (N.D. 1980) (holding that local civil practice Rule 26, based on F.R.Civ.P. 26, "does not contemplate de novo discovery at retrials, trials anew, or new trials" except as to whether certain material will be omitted or new material will be presented at the trial).

## Conclusion and Order

The motion for default judgment is therefore denied.

1. APM's motion for default judgment is denied.

2. Clarke's motion to dismiss the complaint or in the alternative to quash service of process is denied.

It is so ordered.