Forest Hills Utility Co. *v.* City of Heath et al.

[Cite as Forest Hills Utility Co. v. Heath (1973), 37 Ohio Misc. 30.]

(No. 58133—Decided October 23, 1973.)

Common Pleas Court of Licking County.

*Mr. David R. Pheils, Jr., pro se.*
*Mr. J. Gilbert Reese,* and *Mr. James H. McNenny,* for Mary Hargrove.
*Ms. Virginia Weiss,* for intervenor Forest Hills Citizens Committee.

Allen, J.   There was submitted for decision by this court a paper captioned ''Request for Instructions by Notary.''   Discovery proceedings had been initiated under Rule 26 and Rule 30 of the Ohio Rules of Civil Procedure.

The intervenor in this case is described as Forest Hills Lot Owners Association, aka the Forest Hills Citizens Committee, and on August 3, 1973, it filed in this court a second amended cross-complaint, as a class action, against the named plaintiff, Forest Hills Utility Company, and defendants David R. Pheils, Jr., et al.   The cross-complaint asked that a constructive trust be declared in the assets of the Forest Hills Utility Company on behalf of the intervenor and for $1,926,363.67, as compensatory and punitive damages.

Oral depositions for the purpose of discovery under

Civ. R. 26 and 30 were instituted by one of the defendants, David R. Pheils, Jr., *in propria persona.* A *subpoena duces tecum* was served on Mary Hargrove, newsreporter for the Newark Advocate to appear before Darlene Dalton, notary public, at the Licking County Court House on August 29, 1973, at 9:00 a. m., and to bring with her:

"All records, including but not limited to minutes, notes, orders, memos, letters, reports, electronic recordings, sales contracts, or deeds which pertain to or mention directly or by implication, Forest Hills Utility Company, David R. Pheils, Pheils Associates, Inc., Selected Homes, Inc., Forest Hills Recreation Inc., Forest Hills Golf Course, Forest Hills Country Club, Forest Hills Citizens Committee, Forest Hills Residents Committee or Forest Hills Lot Owners Association or Forest Hills Subdivision."

Defendant Pheils subsequently modified the *subpoena duces tecum* to include:

"Those notes and drafts resulting from meetings between Mary Hargrove and the Forest Hills Lot Owners Association, its members, its Attorney and officials of the City of Heath, the PUCO and the Ohio EPA, in preparation for newspaper stories printed in the Newark Advocate about the utilities in Forest Hills and David R. Pheils, Jr.

The time of the taking of the deposition was continued to October 5, 1973, at 1 p. m.

Neither Mary Hargrove, nor her employer, the Newark Advocate, are parties to this suit.

Counsel for Mary Hargrove, on October 2, 1973, filed a motion for a protective order under Civ. R. 26 (C), covering the following:

"Any communications between Mary Hargrove, while employed as a newswoman and engaged in gathering information in the regular course of her employment, and any other person or persons, from whom she obtained or sought to obtain source material for her news stories, which communications, whether directed to her or uttered in her presence, or agreement that she would treat same as confidential communications and not reveal the source and/or content thereof."

Civ. R. 26 and 30 were adopted by the Supreme Court of Ohio pursuant to Section 5(B), Article IV of the Constitution of Ohio. The civil rules provide, in part, as follows:

Civ. R. 26(B) : "(B) * * * (1) in general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Civ. R. 30: "Depositions upon oral examination

"(A) When Depositions may be taken:

"After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination. The attendance of witnesses may be compelled by the use of subpoena as provided by Rule 45. * * *"

The deposition proceeded on October 5, 1973, before Darlene Dalton, notary public. Some 170 questions were answered during the deposition by Mary Hargrove; 5 questions were unanswered on the instructions of her counsel.

Mary Hargrove also testified that she did not possess any drafts, or notes; that all such matters were turned over to her employer, the Newark Advocate prior to being served with the *subpoena duces tecum*; and that she did present copies of news stories published in the Newark Advocate authored by her concerning the Forest Hills Utility Company.

The record of the deposition indicates that counsel for Mary Hargrove objected to the taking of the deposition on the basis that the witness, being a news reporter, was privileged under R. C. 2739.12 and the First Amendment of

the United States Constitution and Section 11, Article I of the Ohio Constitution.

Section 11, Article I of the Ohio Constitution, provides:

"Every Citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press."

The First Amendment of the Constitution of the United States is as follows:

"Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Let us examine the claim of the deponent as it relates to the "Freedom of the Press" provisions of the Constitutions of Ohio and the United States.

Headnote 2 of *Johnson* v. *The Scripps Publishing Co.*, 18 Ohio Op. 372, states: "The Constitutional guaranty of Freedom of the Press imports freedom from any censorship over what shall be published, and exemption from control in advance over dissemination of ideas by writing or printing."

The Supreme Court of the United States has decided that freedom of the press includes not only the right to freely publish, but, also, the right to distribute and sell on the streets newspapers, news media, leaflets, pamphlets, hand bills, and literature, but has never extended the Constitutional guarantees beyond the aforesaid limits. *Marsh* v. *Alabama*, 326 U. S. 501; *Lovell* v. *Griffin*, 303 U. S. 444; *Jamison* v. *Texas*, 318 U. S. 413; *Winters* v. *New York*, 333 U. S. 507.

The civil rules, which are to a large extent patterned after the federal rules of discovery, were adopted by the Supreme Court of Ohio in order to facilitate discovery of the true facts in any action and to do this in an expeditious manner. A major philosophy of the civil rules is that the parties to a lawsuit shall be afforded liberal rights to discovery so that the true facts may become known to all.

It was certainly never contemplated by the Supreme Court of Ohio in its adoption of the Rules of Civil Procedure that R. C. 2739.12 of Section 11, Article I of the Ohio Constitution or the First Amendment of the Constitution of the United States would inhibit or prohibit information needed by a party in the preparation of a pending civil action. *Stokes* v. *The Lorain Journal Co.*, 26 Ohio Misc. 219.

In June 1972, the Supreme Court of the United States in the case of *Branzburg* v. *Hayes*, 408 U. S. 665, decided that it lacks the power to erect a bar to state courts that respond in their own way and construe their constitutions so as to recognize a newsman's privilege, either qualified or absolute. The court further stated that Congress has the freedom to determine whether a newsman's statutory privilege is necessary and desirable and to fashion standards and rules as narrow or broad as are deemed necessary to address the evil discerned, and to refashion those rules as experience from time to time may dictate.

The contention of counsel for Mary Hargrove, newsreporter, that the constitutionally ordained privilege of freedom of the press encompasses and includes the right of a non-disclosure of information gleaned by her in the process of gathering news is devoid of merit, under the discovery provisions of Civ. R. 26 and 30.

Further, let us examine the claim of the deponent, Mary Hargrove, as it relates to R. C. 2739.12. Such section reads as follows:

"2739.12, *Newspaper reporters not required to reveal sources of information*:

"No person engaged in the work of, or connected with, or employed by any newspaper or any press association for the purpose of gathering, procuring, compiling, editing, disseminating, or publishing news shall be required to disclose the source of any information procured or obtained by such person in the course of his employment, in any legal proceeding, trial, or investigation, before any court, grand jury, petit jury, or any officer thereof, before the presiding officer of any tribunal, or his agent, or before any commission, department, division, or bureau of this

state, or before any county or municipal body, officer or committee thereof.''

At common law, newspapers had no privilege to conceal from judicial inquiry either the source of the information or the information itself. 58 American Jurisprudence 305, Witnesses, Section 546; 8 Wigmore (McNaughton rev. 1961), Section 2286, pages 528-30; 7 ALR 3rd pp. 591; *Branzburg* v. *Hayes, supra.*

The Ohio legislature modified this body of the law by enacting R. C. 2739.12, providing that newspaper reporters are not required to reveal sources of information. 58 Ohio Jurisprudence 2nd 635, Witnesses, Section 216.

The purpose of this statute is to encourage the flow of news from persons who might otherwise fear the unfavorable publicity or retribution resulting from the revelation of their name as the source of the news story. This purpose is accomplished by permitting the news reporter to conceal the name of the informant; it is the name of the informant and not the information itself which is protected.

Since the Ohio legislature, in its considered judgment, included R. C. 2739.12 in the "Slander Libel" chapter of the code, it would lead this court to limit the word "source" to animate as opposed to inanimate objects, since only the former can be encouraged to reveal information.

The failure of the Ohio legislature to include news reporters within R. C. 2317.02, the privileged communications and acts section, further indicates that this is not a privilege relating to communications or acts but only to sources.

In construing the comparable federal rule (Fed. R. Civ. P. 26), it has been held that where only a part of the material sought to be obtained by discovery is privileged, the privileged part may be excised by the court before discovery is allowed. 18 Ohio Jurisprudence 2d 30, Discovery and Depositions, Section 28; *Keystone Coat & Apron Mfg. Corp.* v. *Home Ins. Co.* (D. C. Pa.), 21 F. R. D. 32; *United States* v. *Procter & Gamble Co.* (DC NJ) 25 F. R. D. 485; *Merrin Jewelry Co.* v. *St. Paul-Fire & Marine Ins. Co.* (D. C. NY), 49 F. R. D. 54.

This court holds that a witness is not immune from

answering questions on discovery depositions because of the fact that she is a newspaper reporter and the information sought has been gleaned by her in the process of gathering news. (18 Ohio Jurisprudence 2d 34, Discovery and Depositions, Section 30; *Branzburg* v. *Hayes, supra.*)

In reviewing the deposition of Mary Hargrove, and the 5 questions which she was instructed not to answer by her counsel, the court finds that 3 of the questions pertained to her "source" and are excluded by R. C. 2739.12. The other 2 questions, in the opinion of this court, were not relevant to the subject matter of the inquiry, and certainly would not justify the court in ordering the questions to be answered or issuing a contempt of court ruling under Civ. R. 37 (B), if such were the case.

If the deposition should be continued further, as to the deponent, Mary Hargrove, a protective order shall be issued forthwith permitting her to refuse to identify the sources of information gleaned by her in the process of gathering news.

The matter is remanded to the notary public, Darlene Dalton.