Cecil SPENCE and Shirley
Spence, Petitioners,

v.

NORTH DAKOTA DISTRICT COURT,
Burleigh County, South Central Judicial
District, and Dennis A. Schneider, Judge
of District Court for the South Central
Judicial District, acting pursuant to ap-
pointment by Order of the Supreme
Court, Respondents.

Civ. No. 9751.

Supreme Court of North Dakota.

April 21, 1980.

Kapsner & Kapsner, Bismarck, for petitioners; argued by Michael J. Williams.

Wheeler, Wolf, Wefald, Peterson & McDonald, Bismarck, for respondents; argued by Robert O. Wefald, Bismarck.

ERICKSTAD, Chief Justice.

The Spences petitioned this court to exercise its original jurisdiction and issue a supervisory writ directing the trial court to (1) issue an order compelling answers to certain of the petitioners' interrogatories, and(2) award the petitioners reasonable attorney's fees. We decline to do so.

On August 20, 1979, an action was commenced by the Spences against Better Homes, Inc., Elma Krueger, and Walter Krueger, individually and as president of Better Homes, Inc. [hereinafter referred to as Better Homes], by service of a summons, complaint, and interrogatories. The Spences sought to recover damages for injuries they suffered as a result of an alleged defectively-built home they had purchased from Better Homes. Better Homes failed to file answers to the interrogatories within the time period set forth in Rule 33(a) of the North Dakota Rules of Civil Procedure, and, thereafter, the Spences filed a motion pursuant to Rule 37(a), N.D.R.Civ.P., for an order compelling Better Homes to answer. The Spences also asked the trial court to award them reasonable expenses, including attorney's fees, incurred in obtaining the order. See Rule 37(a), N.D.R.Civ.P.

A hearing on the motion was originally scheduled for January 7, 1980, but due to court congestion, the date was changed to January 14, 1980. Between the time the hearing was originally scheduled and the time it was eventually held, Better Homes submitted its answers. At the hearing on the motion to compel answers to the interrogatories, the Spences contended that Better Homes failed to answer certain of the interrogatories relating to the disclosure of Walter Krueger's income tax returns for the past five years, and gave incomplete or evasive answers to several other interrogatories. Specifically, Better Homes objected to and failed to answer interrogatories Nos. 4, 5, 6, 7, 8, and 24 on relevancy grounds, and gave incomplete or evasive answers to interrogatories Nos. 10, 11, 12, 16, 17, 21, and 23. As pertinent to this appeal, the interrogatories at issue, and the answers submitted thereto, are as follows:

"*INTERROGATORY NO. 4*: Did you file an income tax return in any year during the past five (5) years?

"*ANSWER*: I object and refuse to answer this interrogatory, as the answer is irrelevant to any matters in issue in this action.

"*INTERROGATORY NO. 5*: If so, state:

(a) each year filed; and

(b) whether you have copies of these returns.

"*ANSWER*: I object and refuse to answer this interrogatory, as the answer is irrelevant to any matters in issue in this action.

"*INTERROGATORY NO. 6*: If not, state the name of the person, firm or organization which has copies of said returns.

"*ANSWER*: I object and refuse to answer this interrogatory, as the answer is irrelevant to any matters in issue in this action.

"*INTERROGATORY NO. 7*: What was your gross income for each of the following years: 1974, 1975, 1976, 1977, 1978?

"*ANSWER*: I object and refuse to answer this interrogatory, as the answer is irrelevant to any matters in issue in this action.

"*INTERROGATORY NO. 8*: What was your gross income for each of the calendar months of the year 1979?

"*ANSWER*: I object and refuse to answer this interrogatory, as the answer is irrelevant to any matters in issue in this action.

"*INTERROGATORY NO. 8*: What was your gross income for each of the calendar months of the year 1979?

"*ANSWER*: I object and refuse to answer this interrogatory, as the answer is irrelevant to any matters in issue in this action.

\*　\*　\*　\*　\*　\*

"*INTERROGATORY NO. 10*: If so, list any such claims or lawsuits and the dates and places where filed.

"*ANSWER*: The only other such lawsuit that I can recall was a claim by Monte Preabt and Shirley Preabt involving property situated at 1515 Imperial Drive, other-wise known as Lot 23, Block 3, Imperial Valley Subdivision, Bismarck, North Dakota. This lawsuit was commenced by the present attorney for the plaintiffs in this action in a summons dated September 22, 1978, and was recorded in the Burleigh County District Court as Civil No. 27745.

"*INTERROGATORY NO. 11*: Identify any and all written contracts, agreements, warranties or other documents between or among Mr. Walter Krueger, Better Homes, Inc., their agents or employees, and the plaintiffs to this action.

"*ANSWER*: The only written document that I can recall is the earnest money contract executed on the 8th day of December, 1978, when the plaintiffs purchased the property in question.

"*INTERROGATORY NO. 12*: Describe in detail any and all oral contracts, warranties, agreements, or other understandings between or among Mr. Walter Krueger, Better Homes, Inc., their agents or employees and the plaintiffs in this action.

"*ANSWER*: It is my recollection that at the time of the sale of the property to the plaintiffs, there was an understanding that the patio would be completed, the sidewalk to the front porch would be completed, and siding would be put on the fireplace chimney. I can recall nothing else at that time. Subsequently, other conversations were held with the plaintiffs regarding complaints that they had and those complaints have ripened into this lawsuit. These conversations, however, have not resulted in any specific agreement with the plaintiffs.

\*　\*　\*　\*　\*　\*

"*INTERROGATORY NO. 16*: Identify contracts, agreements, or other documents involving Mr. Walter Krueger, Better Homes, Inc., and/or their agents or employees and any contractor or subcontractor identified in response to interrogatory 15 above.

"*ANSWER*: I cannot recall any specific written documents between myself or Better Homes, Inc., and any contractor or subcontractor referred to above.

"*INTERROGATORY NO. 17*: Identify any and all bonds executed and filed with the Secretary of State pursuant to Chapter 43–07 of the North Dakota Century Code and all other bonds required by any governmental authority on behalf of Better Homes, Inc., and/or Walter Krueger. As to each bond, identify the company issuing said bond and the amount of said bond.

"*ANSWER*: To the best of my knowledge, neither I nor Better Homes, Inc., had a contractor's bond at the time the house was constructed.

\*   \*   \*   \*   \*   \*

"*INTERROGATORY NO. 21*: Identify all statements made by you to any person relating to any defects and/or incompletions in or on the house identified in paragraph 13.

"*ANSWER*: I can recall making statements to no one except my attorney, the city building inspectors, and the plaintiffs and their attorneys during the course of the negotiations concerning this matter. I cannot remember the particular details of any statements I may have made, however, I do acknowledge that they do relate to the subject of this lawsuit and the complaints of the plaintiffs.

\*   \*   \*   \*   \*   \*

"*INTERROGATORY NO. 23*: Identify the internal procedures and/or standards of Better Homes, Inc., of construction and/or installation, of the following, and state whether those procedures were complied with in the construction of the house identified in paragraph 13.

(a) Installation of exterior doors;

(b) Installation of windows;

(c) Installation and/or construction of the siding;

(d) Installation and/or construction of the plumbing system;

(e) Installation and/or construction of the soffit vents;

(f) Installation and/or construction of shingles on the roof; and

(g) Installation and/or construction of fresh air return ducts.

"*ANSWER*: To the best of my knowledge, there are no written internal procedures or standards of Better Homes, Inc. The goal of that corporation and myself has always been to use good workmanship and good materials. The materials used in this particular house were good materials in accordance with the standards of Better Homes, Inc. The failure, if any, with respect to this home is in the lack of consistent good workmanship which I attribute to Ken Haff who was hired by Better Homes, Inc., to supervise the construction of this home. So as to each of the items in subparagraphs (a) through (g), the answer is that the materials were good materials, and that any failures to any degree were related to the lack of consistent good workmanship.

"*INTERROGATORY NO. 24*: Identify all transactions involving the sale, renovation, construction, or other improvement to real property in which defendants and/or any other person, natural or corporate in which defendants or any of them have had a management or greater than a five per cent ownership interest, during the last five (5) years.

"*ANSWER*: I object and refuse to answer this interrogatory, as the answer is irrelevant to any matters in issue in this action."

The Spences argued that answers to interrogatories No. 4 through 8, inclusive, and No. 24 were relevant as to one of the elements of damages sought to be recovered, namely punitive damages. Further, they contended that Better Homes could not merely rely upon its memory in answering interrogatories No. 10, 11, 12, 16, 17, 21, and 23, but, instead, they had an affirmative obligation to search their records, as well as other information at their disposal, in order to give more complete answers to the questions.

The Burleigh County District Court, South Central Judicial District, granted the Spences' motion to compel an answer to interrogatory No. 24, but denied the motion to compel answers to the other questions. The trial court determined that the information relating to the disclosure of Krueg-

er's income tax returns, which was sought to be elicited in interrogatories No. 4 through 8, was not relevant to the issue of punitive damages. As to answers to interrogatories Nos. 10, 11, 12, 16, 17, 21, and 23, the trial court held that there had been an attempt by Better Homes to answer the questions, and that the information sought to be obtained was available through other sources if the answers given were deemed to be unsatisfactory. The request for attorney's fees was also denied. It is because of this partial denial of the Spences' motion to compel answers to their interrogatories, and the denial of their request for attorney's fees, that they petitioned this court to exercise its original jurisdiction and issue a supervisory writ.

At the outset, we are faced with two basic issues:

(1) Whether or not this court should exercise its original superintending power, and, if so,

(2) Whether or not the district court erred in refusing to compel Better Homes to answer interrogatories numbered 4 through 8, inclusive, 10, 11, 12, 16, 17, 21, and 23, and in refusing to award attorney's fees.

Article IV, Section 86, of the North Dakota Constitution gives the Supreme Court "original jurisdiction with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction."

■ This court has said on numerous occasions that the power to issue original and remedial writs is discretionary, and that such superintending power cannot be invoked as a matter of right, but will be employed to prevent injustice. *Marmon v. Hodny*, 287 N.W.2d 470 (N.D.1980); *Burlington Northern v. N. D. Dist. Court, Etc.*, 264 N.W.2d 453 (N.D.1978). The Supreme Court will determine for itself, on an ad hoc basis, whether or not a particular case is within its original jurisdiction, and also whether or not it should exercise its discretion in granting this extraordinary measure of relief. *Olson v. North Dakota Dist.*

*Court, Etc.*, 271 N.W.2d 574 (N.D.1978); *State ex rel. Vogel v. Garaas*, 261 N.W.2d 914 (N.D.1978); *Gasser v. Dorgan*, 261 N.W.2d 386 (N.D.1977).

■ This court will decline to exercise its original jurisdiction unless it is shown that the interests of the State are directly affected. *State v. North Dakota Hospital Service Ass'n*, 106 N.W.2d 545 (N.D.1960). It is well-settled that original jurisdiction will be exercised only in those cases in which the matter to be litigated is *publici juris*, wherein the sovereignty of the State, its franchises or prerogatives, or the liberties of its people are directly affected. *State ex rel. Vogel v. Garaas*, 261 N.W.2d 914 (N.D.1978); *Gasser v. Dorgan*, 261 N.W.2d 386 (N.D.1977). Original jurisdiction will not be exercised to vindicate mere private rights, regardless of their importance. It is the rights of the public that must be directly affected. *State v. North Dakota Public Service Com'n*, 79 N.W.2d 297 (N.D.1956); *State v. Hall*, 73 N.D. 428, 15 N.W.2d 736 (1944). To warrant the exercise of the Supreme Court's original jurisdiction, the interests of the State must not be merely incidental, but must be of primary importance, and the public, *i. e.*, the community at large, must have an interest or right which may be affected. *State ex rel. Vogel v. Garaas*, 261 N.W.2d at 916; *Gasser v. Dorgan*, 261 N.W.2d at 390; *State v. Omdahl*, 138 N.W.2d 439 (N.D.1965).

■ The power of general superintending control over inferior courts allows the Supreme Court, in a proper case, to control the course of litigation in district courts and "to prevent injustice in cases when there is no appeal, or when the remedy by appeal is inadequate." *Olson v. North Dakota Dist. Court, Etc.*, 271 N.W.2d at 577; *Weichel v. Hansen*, 219 N.W.2d 118 (N.D.1974). Superintending jurisdiction enables this court to control a lower court, "which though within its jurisdiction, is by mistake of law, or willful disregard of it, doing a gross injustice and there is no adequate remedy by appeal." *State v. Lynch*, 138 N.W.2d 785, 787 (N.D.1965). We further noted in *State v. Lynch, supra* at 787, that "[s]upe-

rintending control is an extraordinary power which will be exercised on behalf of a litigant only under circumstances that are tantamount to a denial of justice." *E. g., Ingalls v. Bakken*, 167 N.W.2d 516 (N.D. 1969).

We have recognized that a supervisory writ is to be used "with caution and forbearance for the furtherance of justice, and to secure order and regularity in judicial proceedings *when none of the ordinary remedies provided by law are adequate.*" (Emphasis added.) *Olson v. North Dakota Dist. Court, Etc.*, 271 N.W.2d at 578; *citing Zinn v. District Court*, 17 N.D. 128, 114 N.W. 475 (1908). We have further expressed the principle that our superintending control over inferior courts will be sparingly used, is never used on light occasions, and will be used only when an emergency exists and there are no other adequate means of correcting the claimed error. *Suburban Sales & Service, Inc. v. District Court of Ramsey County*, 290 N.W.2d 247 (N.D.1980); *Weichel v. Hansen*, 219 N.W.2d 118 (N.D.1974); *Gill v. Gill*, 211 N.W.2d 374 (N.D.1973).

In the instant case, the district court's pretrial order of January 14, 1980, relating to discovery matters, is not appealable. *See* Section 28–27–02, N.D.C.C.; *Northwest Airlines v. State, Through Bd. of Equal.*, 244 N.W.2d 708 (N.D.1976); *Budge v. Anderson*, 146 N.W.2d 169 (N.D.1966). Nevertheless, we do not believe that an adequate showing has been made for this court to exercise its original jurisdiction.

The Spences filed this petition shortly after the district court refused to compel Better Homes to answer the interrogatories at issue. No attempt was ever made to exhaust the many other discovery devices available under the North Dakota Rules of Civil Procedure which may have disclosed the information sought to be obtained through the interrogatories. The interrogatories were addressed to Walter Krueger, individually and as president of Better Homes, Inc. Counsel for the Spences argued that Krueger's income tax returns for the past five years, and the information contained therein, may contain "a wealth of information" relevant not only to the issue of punitive damages, but also to the reasons why substandard materials were allegedly used in the construction of Spences' home. He contends that, in addition to disclosing Krueger's gross income for the past five years, which he asserts is relevant to an award of punitive damages, the returns may reveal the types and kinds of materials used in the construction of the house and/or the existence of a cash flow problem. This, in turn, would indicate why substandard materials were allegedly used. In addition, counsel for the Spences contends that Krueger cannot merely rely upon his recollection in answering interrogatories Nos. 10, 11, 12, 16, 17, 21, and 23. He argues that Krueger has an affirmative obligation to review the records under his possession, custody, and control, and give a more complete answer to the questions.

We need not address these contentions because we do not believe an adequate showing has been made for this court to exercise its superintending powers. The Spences have not shown that a gross injustice has occurred, nor that their remedy by appeal is inadequate. *See State v. Lynch*, 138 N.W.2d 785 (N.D.1965). Nor have the Spences shown that none of the ordinary remedies provided by law are adequate. *See Olson v. North Dakota Dist. Court, Etc.*, 271 N.W.2d 574 (N.D.1978); *Weichel v. Hansen*, 219 N.W.2d 118 (N.D.1974).

As previously established, our superintending control over inferior courts will be sparingly used and will never be used on light occasions. *Gill v. Gill*, 211 N.W.2d 374 (N.D.1973). The power to exercise supervisory control will only be used when an emergency exists and there are no other adequate means of correcting the claimed error. *Suburban Sales & Service, Inc. v. District Court of Ramsey County*, 290 N.W.2d 247 (N.D.1980). It is equally well-established that our original jurisdiction will not be exercised to vindicate mere private rights. Before the Supreme Court will exercise its original jurisdiction, the matter to be litigated must be *publici juris* or pertaining to the people and affecting

the community at large. Only when the rights or interests of the public are directly affected will the exercise of original jurisdiction be justified. *State ex rel. Vogel v. Garaas*, 261 N.W.2d 914 (N.D.1978); *Gasser v. Dorgan*, 261 N.W.2d 386 (N.D.1977).

We believe that the Spences' petition for the issuance of a supervisory writ, directing the trial court to issue an order compelling answers to certain of their interrogatories and awarding attorney's fees, involves a private interest, and is not a matter which directly affects the interests of the public at large. It is a matter which concerns only the rights or interests of private parties which does not justify the exercise of our original jurisdiction. "To be a matter involving public interest, something must be involved in which the public, the community at large, has an interest or a right which may be affected." *State v. North Dakota Hospital Service Ass'n*, 106 N.W.2d at 547. We also believe that there are other discovery devices available under the North Dakota Rules of Civil Procedure which can be utilized in order to obtain the information sought to be elicited through the interrogatories. *See* Rule 30 (depositions upon oral examination), Rule 34 (production of documents and things), and Rule 36 (requests for admissions).[1] Further, the Spences do have an adequate remedy at law in that they are entitled to appeal from an unfavorable judgment, and the order of the district court would be reviewable at that time. We are not of the opinion that the action of the district court is such that the Spences will suffer grave and serious prejudice for which they have no adequate remedy. *See Ingalls v. Bakken*, 167 N.W.2d 516 (N.D.1969).

A supervisory writ is not intended to be a substitute for appeal, nor is it intended to be used in lieu of other adequate remedies available under the law which include, but are not limited to, the full utilization of our discovery rules. The Legislature has specifically enumerated in Section 28–27–02, N.D.C.C., those orders which are appealable to the Supreme Court. Appeals from interlocutory orders will lie only when authorized by statute. *State ex rel. Olson v. Nelson*, 222 N.W.2d 383 (N.D. 1974). A pretrial discovery order which denies a motion to compel answers to interrogatories is an interlocutory order and is not appealable pursuant to Section 28–27–02, N.D.C.C. Such an order must be raised as an issue on a subsequent appeal from a judgment. To hold otherwise would destroy the concept of speedy administration of justice and "trials would be subject to constant interruptions and delays in order that such rulings could be carried to the Supreme Court for review." *Northwest Airlines v. State, Through Bd. of Equal.*, 244 N.W.2d at 710. For these same reasons, we believe that granting a supervisory writ in the instant case would encourage bifurcated trials and render the prohibitions against appeals from interlocutory orders nugatory. *See* Section 28–27–02, N.D.C.C.

Notwithstanding what we have done here in discussing state ex rel. proceedings along with mere applications by a private party for a superintending writ, we acknowledge that there is a different basis for each. However, in each instance this court has final discretion to decide whether or not it will exercise its jurisdiction.

We conclude that the exercise of our original superintending control in this case is not justified.

The petition for a supervisory writ is denied.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.

---

1. For a discussion on the discovery and inspection of income tax returns in actions between private individuals, or in civil actions and proceedings in which the government is not a party, *see* Annot., 70 A.L.R.2d 240 (1960).