The GRAND FORKS HERALD, a corporation, and Beverly Kees, its Executive Editor, Petitioners,

v.

The DISTRICT COURT In and For GRAND FORKS COUNTY, the Honorable A. C. Bakken, and Lillian Leng, Respondents.

Civ. No. 10242.

Supreme Court of North Dakota.

Aug. 12, 1982.

Thomas John Kuchera, of Kuchera, Stenehjem & Wills, Grand Forks, for petitioners.

Patrick Morley, of O'Grady, Morley & Morley, Grand Forks, for respondents.

VANDE WALLE, Justice.

The Grand Forks Herald (hereinafter "Herald") requested this court to exercise its original jurisdiction and issue a supervisory writ directing the judge of the District Court for Grand Forks County to vacate its order compelling the Herald to respond to a subpoena duces tecum by supplying photographs of an automobile-motorcycle accident in the public streets of the city of Grand Forks. We deny the writ.

Shortly after the accident a photographer from the Herald took one or more photographs of the accident scene. One of the photographs was published by the Herald. As a result of the accident John Lian, the operator of the motorcycle, filed suit against Lillian Leng, the operator of the automobile. Helga Grunenwald, a passenger on the Lian motorcycle, also filed suit against Leng. With regard to the latter suit Leng filed a third-party complaint against Lian. Leng attempted to obtain from the Herald all the photographs of the scene of the accident in the Herald files. The Herald customarily and regularly offers to the public, at a cost of $25, a print of a photograph that it has published. The Herald does not make unpublished photographs available to anyone at any price. Counsel for Leng obtained a subpoena duces tecum which required John Stennes, chief photographer of the Herald, to appear before the District Court and to bring with him any and all photographs or negatives of the accident in the Herald files. After certain procedural maneuvering the Herald filed a motion to quash the subpoena. A hearing[1] on the motion to quash the subpoena was held before the District Court on June 10, 1982, and an order requiring the Herald to produce for Leng's counsel all photographs taken of the accident and surroundings by any Herald photographer was

---

1. Although the manner in which discovery of the photographs was sought is raised as an issue by the Herald, it appears that the parties agreed at the hearing before the District Court that the hearing could proceed as a motion to compel discovery. In view of this fact we do not believe a procedural issue was reserved for our review. However, parties seeking information protected by Section 31–01–06.2, N.D.C.C., should be aware that if the person from whom the information is sought claims the privilege, the statute requires disclosure only after a hearing before a district judge and the district judge has found that the failure to disclose the evidence will result in a miscarriage of justice.

issued on June 11, 1982. The petition for a supervisory writ followed. After requesting briefs from the parties and after oral argument the matter is before us for decision.

Before considering the merits of the petition, we must determine whether or not we will exercise original jurisdiction. We have stated many times that the power of our court to issue original remedial writs, even upon a proper showing, is discretionary and that the power cannot be invoked as a matter of right but will be employed to prevent possible injustice. *Spence v. North Dakota District Court,* 292 N.W.2d 53 (N.D. 1980); *Suburban Sales v. District Court of Ramsey County,* 290 N.W.2d 247 (N.D. 1980); *City of Williston v. Beede,* 289 N.W.2d 235 (N.D.1980); *Marmon v. Hodny,* 287 N.W.2d 470 (N.D.1980); *Burlington Northern v. North Dakota District Court,* 264 N.W.2d 453 (N.D.1978). From this it necessarily follows that the court itself, on a case-by-case basis, will determine whether or not it should exercise its original jurisdiction. *Marmon, supra; Burlington Northern, supra; State ex rel. Foughty v. Friederich,* 108 N.W.2d 681 (N.D.1961).

We have also indicated numerous times that we will exercise original jurisdiction only where justice is threatened and no other remedy is adequate or allowed by law. *Spence, supra; Malony v. Cass Cty. Court of Increased Juris.,* 301 N.W.2d 112 (N.D. 1980). In determining if another remedy is provided by law, we have considered whether or not the order we are asked to review is appealable and we have indicated that a supervisory writ is not intended to be a substitute for appeal nor is it intended to be used in lieu of other adequate remedies available under the law. *Spence, supra.* In determining whether or not an adequate remedy is available, we have said that an order which is not appealable as a final order but is reviewable on the appeal of a

judgment provides an adequate remedy. *Suburban Sales, supra; Spence, supra.*

■ There appears to be little doubt that an order involving a discovery proceeding is interlocutory, is not a final order, and is not appealable. *Marmon, supra; Northwest Airlines, Inc. v. State, Through Bd. of Equal.,* 244 N.W.2d 708 (N.D.1976). In this instance the order is neither directly appealable nor is it reviewable on an appeal from a final judgment because the Herald is not a party to the action between Lian, Grunenwald, and Leng and therefore would have no standing to appeal from a final judgment.[2] Nevertheless, although a discovery order may not be directly appealable or subject to review on appeal from a final judgment, and although no other adequate remedy is provided, the increasing caseload of this court makes it apparent that we cannot correct, through original jurisdiction, every miscarriage of justice which someone may perceive to be present in an interlocutory order of a lower court. However, in this case it is alleged that the merits of the issues involve a matter of substantial public interest [see *Spence, supra*], the First Amendment right of freedom of the press. Furthermore, the issues involve a case of first impression, insofar as the construction by this court is concerned, of the so-called "shield" statute, Section 31–01–06.2, N.D.C.C. Because the order of the District Court is neither appealable nor, apparently, subject to review on appeal from a final judgment, and because it involves a matter of some public interest, we determine to exercise our original jurisdiction and review the order of the District Court requiring the Herald to produce for Leng's review the photographs taken by a Herald photographer at the scene of the accident in question.

The primary issue in this case arises as a result of a dispute between the principle that the public has a right to every man's

2. Leng obviously would not and could not raise the issue of the order on appeal from a final judgment because the order is favorable to her position. We are unaware whether or not Grunenwald or Lian would raise the issue on an appeal from a final judgment because their position is unknown to us. They did not participate in the proceedings before this court. In any event, the Herald would have no right to raise the issue on appeal from a final judgment because it is not a party to the actions involving Grunenwald, Lian, and Leng.

evidence, except for those persons protected by a constitutional, common-law, or statutory privilege, and the interest in maintaining a free and unfettered press as guaranteed by the First Amendment to the United States Constitution. The Herald alleges that the District Court erred in refusing to recognize that Section 31–01–06.2, N.D.C.C., enlarges and makes more certain the privilege conferred upon news gatherers by the First and Fourteenth Amendments to the Constitution of the United States.

The application of the First Amendment to discovery proceedings involving the news media is the subject of some dispute. *Winegard v. Oxberger*, 258 N.W.2d 847 (Iowa 1977), *cert. denied* 436 U.S. 905, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978). In *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the United States Supreme Court held that requiring newsmen to appear and testify before a State or Federal grand jury did not abridge the freedom of speech and press guaranties of the First Amendment. Some subsequent decisions by lower courts have attempted to limit that decision to its facts, i.e., appearances of newsmen before State or Federal grand juries. See Annot., 99 A.L.R.3d 37. As an example, in *Democratic National Committee v. McCord*, 356 F.Supp. 1394 (D.C.Cir.1973), Judge Richey, in discussing *Branzburg*, distinguished the decision and indicated that considerations in civil discovery are vastly different from those in the criminal context, and held that newsmen had a "qualified privilege" under the First Amendment from having to testify. See also *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir.1981). Other courts have reached an opposite conclusion, holding that there is no First Amendment privilege involved. See, e.g., *Forest Hills Utility Co. v. City of*

*Heath*, 37 Ohio Misc. 30, 302 N.E.2d 593 (1973).

We need not determine whether or not news gatherers have a First Amendment privilege, qualified or otherwise, to not testify or divulge information, including the furnishing of photographs obtained as a result of their activities as news gatherers. In 1973 the North Dakota Legislature enacted Senate Bill 2077, codified as Section 31–01–06.2, N.D.C.C. The enactment of the legislation was in apparent response to the *Branzburg* decision. See minutes of the Senate Judiciary Committee of January 10, 1973, and minutes of the House Judiciary Committee of February 27, 1973. Section 31–01–06.2, N.D.C.C., provides:

"*Disclosure of news sources and information required only on court order.*—No person shall be required in any proceeding or hearing to disclose any information or the source of any information procured or obtained while the person was engaged in gathering, writing, photographing, or editing news and was employed by or acting for any organization in publishing or broadcasting news, unless directed by an order of a district court of this state which, after hearing, finds that the failure of disclosure of such evidence will cause a miscarriage of justice."

We will limit our review in this proceeding to the interpretation and application of the statute. Neither side has alleged that the statute is invalid on its face.[3]

The Herald also alleges that the district court abused its discretion in determining that a miscarriage of justice would occur if the Herald did not disclose the photographs. The Herald does not contend that our review of the matter extends beyond determining whether or not the District

---

**3.** Because it was not raised as an issue, we do not decide the authority of the Legislature, as opposed to the authority of this Court, to regulate the admission of evidence in a judicial proceeding. Section 3 of Article VI of the North Dakota Constitution grants to the Supreme Court the authority "to promulgate rules of procedure, including appellate procedure, to be followed by all the courts of this state; ..." Many of the same privileges found in Chapter

31–01, N.D.C.C., are found in Article V, N.D. R.Ev. The substance of Section 31–01–06.2 is not found in any of the North Dakota Rules of Evidence. However, Rule 501 thereof provides: "Except as otherwise provided by constitution or statute or by these or other rules promulgated by the Supreme Court of this State, no person has a privilege" to refuse to be a witness, refuse to disclose any matter, etc.

Court abused its discretion and both sides agree that an abuse of discretion is the standard of review before this court. Therefore, that is the standard of review we will apply. See *Matter of Adoption of Gotvaslee*, 312 N.W.2d 308 (N.D.1981). We have indicated that a trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. See *Dobervich v. Central Cass Public School Dist.*, 302 N.W.2d 745 (N.D.1981). Furthermore, an abuse of discretion by the trial court is never assumed but must be affirmatively established. *City of Grand Forks v. Grand Forks Herald,* 307 N.W.2d 572 (N.D. 1981).

Leng urges that we hold the statute applicable only in those instances in which the information sought has been obtained by the Herald from a confidential source. In support of her position Leng refers us to the legislative history concerning the enactment of Section 31–01–06.2, N.D.C.C. That history does reveal that the testimony before the committees hearing the bill referred to protection of confidential sources. There also appears to be little doubt that a forced revelation of a confidential source by a news gatherer could have a "chilling effect" on the ability of the news gatherer to obtain information from confidential sources in the future. Leng argues that because the statute is not entirely clear as to whether or not it applies to the disclosure of a nonconfidential photograph of a public event, we have reason to refer to the legislative history to reach the result that the protection of the statute is limited to the disclosure of confidential sources. We are aware that at least one jurisdiction has implied a confidential-source requirement in its statute for a news gatherer to obtain the protection of the shield law. See *Andrews v. Andreoli*, 92 Misc.2d 410, 400 N.Y.S.2d 442 (S.Ct.1977); *People v. Dupree*, 88 Misc.2d 791, 388 N.Y.S.2d 1000 (S.Ct.1976). A Federal court has held that confidentiality is immaterial. See *Loadholtz v. Fields,* 389 F.Supp. 1299 (M.D.Fla.1975). That decision was based on common law and not on a statutory interpretation.

However, before we can resort to legislative history to construe a statute, that statute must be ambiguous. When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Sec. 1–02–05, N.D.C.C. We find nothing ambiguous in the statute. It is not limited to disclosure of confidential sources. It applies, by its own terms, to "any information or the source of any information" obtained by a news gatherer. If we were to impose a requirement that the protection of the statute applies only to disclosure of confidential sources, we would violate Section 1–02–02, N.D.C.C., which requires us to construe words in any statute in their ordinary sense unless a contrary intention plainly appears. We can find no intent in the wording of the statute that its protection be limited to confidential sources.

We do not imply that there is no difference between requiring the disclosure of a confidential source or confidential information and requiring the disclosure of information or sources that are not confidential. Confidentiality is a matter which a district court may desire to take into consideration in determining whether or not the failure to require disclosure would result in a miscarriage of justice. We simply note that confidentiality is not a threshold requirement for the news gatherer to receive the protection of the shield statute. Other jurisdictions have indicated that there is also a vast difference between disclosure in a civil matter in which the news gatherer is not a party, a civil action such as an action for slander or libel in which the news gatherer is a party, and a criminal action. See, e.g., *Loadholtz v. Fields, supra.* However, Section 31–01–06.2, N.D.C.C., makes no distinction between civil and criminal actions or actions in which the news gatherer is or is not a party. The statute, by its own terms, applies to "any proceeding or hearing." Again, we do not imply that these are matters which the trial court may not consider; the trial court may consider such matters in determining whether or not failure to disclose will result in a miscarriage

of justice. We do, however, hold that the right to invoke the statute by either party is not dependent solely upon the type of action in which disclosure is sought.

The Herald urges that we construe the statute to apply only in those instances in which the litigant has exhausted every reasonable alternative source of information. It alleges that Leng has not made such a showing in this instance. Thus the Herald notes that it did publish one photograph which Leng could have obtained by simply paying $25, as any other person requesting a published photograph may do. Leng did not request a copy of that photograph in accordance with the policy of the Herald. The Herald notes that the published photograph contains pictures of people who may have observed the accident and that Leng has made no effort to secure that photograph or identify the spectators pictured in the photograph in order that she might obtain the needed evidence from them.

■ Senate Bill 2077 as originally introduced contained a provision which would have required a district court to expressly find, before ordering disclosure, that disclosure by the news gatherer is the only method by which such evidence, or evidence of similar effect, can be obtained. That requirement and the requirement of the existence of probable cause to believe that the news gatherer or his source has evidence which is relevant and material to an issue of proper concern to the party requesting the disclosure were deleted from the bill by amendment on the floor of the Senate. See page 560, Journal of the Senate, 43d Session, North Dakota Legislative Assembly. The only requirement left in the bill was that a district court find that the failure to disclose such evidence "will cause a miscarriage of justice." The deletion from the bill of the specific requirement which the Herald now asks us to impose in order that the District Court may require disclosure diminishes the Herald's argument in this regard. See *Nelson v. Westland Oil Co.*, 96 F.Supp. 656 (D.N.D.1951); *Gimble v. Montana-Dakota Utilities Co.*, 77 N.D. 581, 44 N.W.2d 198 (1950). We conclude that a specific

finding that the only method by which the evidence can be obtained is from the news gatherer is not required as an absolute condition of disclosure, but that a district court may consider the availability of the evidence from other sources in determining whether or not a miscarriage of justice would occur if disclosure were not ordered.

■ Some of the jurisdictions which have considered this matter, either under a common-law principle or a specific statute, have indicated that disclosure should be required only in those instances in which the information desired is not available from another source. See, e.g., *Loadholtz v. Fields, supra.* Other courts have indicated that there must be a compelling interest in order to permit a countervailing right to take precedence over the news gatherer's right to protect confidential sources. *Zerilli v. Smith, supra.* We believe that both of these matters should be considered by the trial court in determining whether or not the refusal to require disclosure would result in a miscarriage of justice under our statute. The result of these varied approaches appears to result in a balancing of all factors, including the public interest in the free flow of information against other important interests; whether or not the information is necessary or critical to the involved cause of action or defense pleaded; that other reasonable means available by which to obtain the information sought have been exhausted; and that it does not appear from the record that the action or defense is patently frivolous. See *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co.*, 455 F.Supp. 1197 (N.D.Ill.1978), 99 A.L.R.3d 37; *Winegard v. Oxberger, supra.*

■ In striking the proper balance between the protection given to news gatherers by the shield statute and the obligation of all citizens to give relevant testimony, we hold that the District Court did not abuse its discretion. There is no argument that the lawsuits involving Leng, Lian, and Grunenwald are frivolous. Although the Herald argues that Leng has not shown that the information she requests is not available from other sources, we conclude

that an adequate showing has been made. It is true that Leng did not seek a copy of the photograph which was published so that she could contact the persons pictured therein who may have been witnesses to the accident nor did Leng make any showing that she had attempted to identify those witnesses. However, it is not the personal testimony of potential witnesses which Leng seeks. Rather, she alleges—and the pleadings support her allegation—that the point of impact is an issue. While eyewitness testimony would be of assistance in establishing the point of impact, photographs of the accident scene would be more graphically descriptive of the exact location. Furthermore, photographs are not subject to the vagaries of the human mind in recalling what a person saw at a point some time past. It is common knowledge that photographs of the scene of an accident are ordinary tools which trial attorneys use in lawsuits of this nature. Because of the dispute as to the point of impact the photographs take on an even greater significance than they otherwise might have. Leng established that there were no other photographs taken of the scene of the accident. The officer investigating the accident, a city police officer, testified by deposition that the police department did not take any pictures of the scene of the accident. Therefore, we believe that Leng has shown that she has exhausted other available means of securing this particular information.

Although we said that confidentiality of the information sought to be disclosed is not a necessary prerequisite to protection of the shield statute, we also indicated that it is one of the factors which may be considered by the trial court. In this instance the photographs were taken of an accident scene in the public streets of the city of Grand Forks. One of the photographs taken by the Herald was published. We assume that any one of the photographs taken by the Herald could have been published and, of course, there could be no argument that such a photograph was not available because the policy of the Herald is to make copies of such photographs available to the public. Therefore, requiring the disclosure of the photographs will not violate any confidentiality of the Herald or any persons appearing in the photograph. We also assume the photographer did not request the permission of the persons present at the scene of the accident to take the photograph. Although the Herald argues that such persons may be unwilling to be photographed at the scene of an accident in the future if they are aware their pictures might be made public, this argument would appear to be without merit in view of the fact that the Herald published such a picture of its own accord in its daily newspaper. The fact that the information sought is not confidential may be more reason for requiring disclosure. However, the decision of the trial court to require disclosure must nevertheless rest upon a finding of a miscarriage of justice. Because the issue in the lawsuits involves the point of impact and because the photographs may contain unique evidence involving that issue, we believe that to refuse to require their disclosure would constitute a miscarriage of justice.[4]

4. We cannot state as a matter of fact that the photographs would be beneficial in determining the point of impact because the Herald objected to an *in camera* inspection of the photographs and the trial court did not inspect them. However, because the photographs are of the scene of the accident and because they are the only photographs of the accident scene available, we assume their relevancy. Photographs of the scene of an accident ordinarily are helpful to a jury and we cannot require Leng to prove beyond any doubt that the photographs will be vital when neither she, the trial court, nor this Court has been permitted to inspect them. The Herald refused to permit an *in cam*-era inspection because, in the words of its counsel at the hearing before the District Court: "Precisely the same findings are required by the statute when the procedure is to compel disclosure in camera as when it is to compel a turnover by the court to counsel for use at trial."

It is the Herald's position that disclosure to a trial judge *in camera* represents precisely the same threat to the interests protected by the privilege as disclosure to counsel or to the world. However, *in camera* inspections have been permitted where the party requesting disclosure has shown that the information is relevant and material; that it could not be secured

Here, the newsgatherer is not asked to testify to what he observed; he is merely asked to produce photographs that he took in a public street, one of which photographs was published.[5]

The Herald also argues that to require disclosure in this instance would have a "chilling effect" on the First Amendment rights of news gatherers. We do not agree. Each case involving the application of Section 31–01–06.2, N.D.C.C., will necessarily be decided by a district court on the facts peculiar to that case. Our decision cannot be construed, as the Herald apparently fears, as a precedent which will permit fishing expeditions into a news gatherer's files nor as a precedent which will permit a news gatherer to be required to submit to discovery procedures in a case in which the newsperson is not a party, in the remote possibility that the person may have some information which would be beneficial to a party in a legal action. Limited as it is, then, to the facts of this case, in which the Herald is requested to disclose photographs taken at the scene of an accident in a public street, one of which photographs—apparently selected at random or for reasons other than protecting the confidentiality of the persons pictured therein—was published in the Herald's daily newspaper, we fail to see any chilling effect which might arise from our decision. Future cases will, as we said earlier, be decided on the facts therein and not on the facts with which we are here concerned. Should parties to a lawsuit abuse the discovery proceedings by requiring disclosure from a news gatherer simply because it is easier or less expensive to acquire evidence in that manner, by conducting a fishing expedition without any firm knowledge that the news gatherer has information which will be of assistance in a determination of the legal action, or by requiring disclosure of confidential information in instances in which the necessity for a free and unfettered press outweighs the benefits to be obtained from such disclosure, we are confident that our district courts, under the provisions of our shield statute, will be able to weigh the necessary factors, balance the competing interests, and protect the news gatherers from any unwarranted invasion of the news gatherers' privilege provided by the statute. This, however, is not such a case.

In balancing the competing interests in this case, we believe the interest of the Herald in protecting this particular information is slight and the showing required of Leng therefore is not great. Leng has sustained her burden.

We conclude that the District Court did not abuse its discretion in requiring the disclosure of the photographs by the Herald.

The petition for a supervisory writ is denied.

ERICKSTAD, C. J., and PAULSON, J., concur.

PEDERSON, Justice, concurring specially.

Because controlling issues have not been raised, it is impossible for this court, in this original proceeding, to do anything other than that proposed by Justice Vande Walle.

from any less intrusive source; and that the party had a legitimate need to see and otherwise use it. *Matter of Farber*, 78 N.J. 259, 394 A.2d 330 (1978). See also *State v. Boiardo*, 82 N.J. 446, 414 A.2d 14 (1980), construing statutory provisions for *in camera* inspection. Because we believe the issue of an *in camera* inspection by the trial court no longer is an issue in these proceedings, we make no further comment upon the position taken by the Herald with regard thereto.

**5.** It is interesting to note that minutes of the February 27, 1973, meeting of the House Judiciary Committee, in considering Senate Bill 2077, which was ultimately enacted and codified as Section 31–01–06.2, N.D.C.C., reflect the following exchange between a committee member and the sponsor of the bill:

"REP. WINKJER stated that he is thinking of another situation where a newsman may have covered an automobile accident and afterwards a civil suit arose. Would this bill prohibit the deposition to find out if the newsman had information.

"SENATOR HOLAND stated wouldn't you think the court could take care of that."

Section 31–01–06.2, NDCC, is ambiguous, and all of the extrinsic evidence presented fails to disclose a legislative intent that is not absurd. If the statute was intended to provide an impenetrable shield controlled entirely by, and at the whim of, the Grand Forks Herald, it is useless and absurd. If, on the other hand, it was intended to authorize a judge to make a finding based on the absence of evidence, it is equally absurd.

The legislature should either require an *in camera* disclosure whenever the shield is claimed, or eliminate the requirement that the judge make a finding.

SAND, Justice, concurring specially and dissenting.

I concur in the end result but not in the rationale or method by which the result was reached or obtained.

Initially, in my opinion, NDCC § 31–01–06.2 generally, and especially under the facts of this case, does not apply to the photographs taken at the scene of the accident. In making this statement I am not implying that other photographs may never be treated as confidential or privileged. Under different facts or extenuating circumstances, which are not present here, photographs may be treated or considered confidential or privileged.

The statute, in essence, provides:

"No person shall be required ... to disclose *any information* or *the source of any information procured* or *obtained* while ... engaged in gathering, writing, photographing, ... and was employed by or acting for any organization engaged in publishing or broadcasting news, unless directed by an order of a district court ... which, after hearing, *finds* that the failure of disclosure ... will cause a miscarriage of justice." [Emphasis added.]

It is information or source of information which is protected. I can see no chilling effect on newsgathering regarding the taking of pictures of a situation which may be and was viewed by the general public.

If the statute applies to the photographs, which I don't agree it does, then I am of the opinion it was not properly followed in the instant situation. Assuming the statute applies to the photographs in this case, then the court, on a proper showing, will be required to conduct a hearing. The statute implies that at the hearing the party seeking the disclosure will be required to either establish probable cause for the court to require the submission of the photographs to the court for an in camera inspection or, in the alternative, to submit competent evidence to enable the court to *find* if the failure to disclose will cause a miscarriage of justice.

Technical words and phrases used in a statute which have acquired a peculiar and appropriate meaning in law shall be construed according to such peculiar and appropriate meaning or definition. NDCC § 1–02–03. Also, statutes are to be construed liberally with the view to effect its objective and promote justice. NDCC § 1–02–01; *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975).

The term "finds," as used in the statute in question, is a legal expression[1] and is comparable to the phrase "finding of fact" which must be based upon competent and relevant evidence and inferences which may be properly drawn from such evidence and not upon assumption or speculation. Otherwise, the findings will be clearly erroneous. It requires more than probable cause. The probable cause concept was in the original bill but was amended out.[2]

1. "Find" is defined in Black's Law Dictionary as follows: "To announce a conclusion upon a disputed fact or state of facts; as a jury is said 'to find a will.' To determine a controversy in favor of one of the parties; as a jury 'finds for the plaintiff.'" *See also*, "finding." Black's Law Dictionary 568 (5th ed. 1979).

2. Senate Bill No. 2077, as initially introduced, contained the following language:

"Unless directed by a final order of a district court of this state which after a hearing expressly finds:
1. the existence of probable cause to believe that the respondent or his source has evidence which is relevant and material to an issue of proper concern to the petitioner, and

However, I believe probable cause was shown in this case to justify the court to order the production of the photographs in camera for the examination by the court so the court could make a valid finding whether or not a miscarriage of justice will occur if the photographs are not disclosed.

In my opinion the evidence submitted to the court in the instant case only warranted probable cause to order the submission of the photographs to the court in camera for inspection, but otherwise is not sufficient to find that a failure to disclose will cause a miscarriage of justice.

The proceedings contemplated by NDCC § 31–01–06.2 do not come under the exception stated in Rule 52, NDRCivP, such as Rules 12 or 56, or motions as generally stated in the rule. They are instead governed by the statute and are comparable or similar to the proceedings set out in Chapter 27–20, especially §§ 27–20–44 and 27–20–50, wherein the statute specifically provides "if . . . the court finds."

The legislature could have used a number of other terms or expressions, such as "if the court determines, concludes or decides," or any other similar expression, but instead it used the expression "if the court finds." We must therefore conclude that the legislature chose the expression deliberately, especially so when the act was subjected to amendments as was the case here.

I cannot agree the court could make a valid finding that a failure to disclose the photographs will cause a miscarriage of justice upon the evidence submitted.

The photographs, except for the one that appeared in the newspaper, were not described by the person who took them or by anyone who knew the contents thereof, nor were they viewed by the court.

In the petition for the supervisory writ the applicant attorney, in an affidavit, stated: "It appears that shortly after the accident a photographer from the Grand Forks Herald took one or more photographs of the accident scene." Witness John Stennes, at the hearing before the district court, testified that he is the chief photographer of the Grand Forks Herald and is the custodian of the photographs of the automobile accident in this case. He also testified that the Grand Forks Herald published one photograph, and that he did not have to ask anyone's permission to take the pictures. However, he never really answered the question if anyone gave him confidential or otherwise inside information regarding the taking of the pictures.

Under these facts I do not believe the court could justifiably find that a nondisclosure of the photographs will cause a miscarriage of justice.

As stated earlier, I do not believe that the statute in question applies to photographs in this case, particularly when the paper has published one of the pictures and is offering it for sale to the public at a given price. On this basis I would affirm the decision of the district court by denying the application for a supervisory writ.

2. disclosure by the respondent is the only method by which such evidence, or evidence of similar effect, can be obtained; and
3. the failure of disclosure of such evidence will cause a miscarriage of justice." *See* Senate Journal of 1973, page 560, and Ch. 258 of 1973 Session Laws.

The Bill as amended now provides:
"By an order of a district court of this state which after hearing finds that the failure of disclosure of such evidence will cause a miscarriage of justice."